**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COREY RICHARD HORNE, | : | CIVIL ACTION NO. **1:11 CV-1378** |
| | : | |
| Petitioner | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| THOMAS KEARNEY, | : | |
| District Attorney, York County, and | : | |
| MARY SABOL, | : | |
| Warden York County Prison, | : | |
| | : | |
| | : | |
| Respondents | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On June 2, 2011, Corey Richard Horne, an inmate at the York County Prison ("YCP"), York,

Pennsylvania, filed, *pro se,* a Habeas Corpus Petition, pursuant to 28 U.S.C. § 2254, with this Court.

(Doc. 1, Civil No. 11- 1062, M.D. Pa.).  Horne attached exhibits to his habeas petition.  Horne filed

a 2-page supplement to his habeas petition on July 7, 2011.  (Doc. 5, Civil No. 11- 1062).  Horne

named as Respondents YCP Warden Sabol and York County District Attorney Kearney.

On July 18, 2011, we gave preliminary consideration to Horne's habeas petition under Rule

4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254

(1977) (applicable to § 2241 petitions under Rule 1 (b)).  *See Patton v. Fenton*, 491 F. Supp. 156,

158-59 (M.D. Pa. 1979); *Romero v. Holt*, 2006 WL 3437360 (M.D. Pa.); *Winfield v. Martinez*, 2008

WL 4541945 (M.D. Pa.).[1]  We issued a Report and Recommendation ("R&R") and recommended

---

[1]Rule 4 provides in relevant part: "If it plainly appears from the face of the petition and
any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the

that Horne's Petition for Writ of Habeas Corpus (Doc. 1, Civil No. 11- 1062) be summarily dismissed without prejudice. (Doc. 6, Civil No. 11- 1062). We found that Horne's habeas petition should be dismissed without prejudice to re-file it after he completed exhaustion regarding his challenge to his YCP detention. We found that the York County Common Pleas ("CCP") and the state appellate courts should first be given the opportunity to resolve the pending appeal regarding the dismissal of Horne's charges with prejudice in York County. Since the state courts did not yet have an opportunity to address the merits of Horne's claims attacking his detention at YCP, we found that his habeas petition should be dismissed without prejudice, to the extent it raised cognizable claims, to re-file it after he exhausted his state court remedies.

On August 16, 2011, the Court adopted our R&R and dismissed Horne's habeas petition without prejudice. (Doc. 11, Civil No. 11- 1062).

On July 25, 2011, Plaintiff Horne filed the above-captioned civil rights action, pursuant to 42 U.S.C. §1983, against Defendants Thomas Kearney, District Attorney, York County, and Mary Sabol, Warden, York County Prison. (Doc. 1, Civil No. 11- 1378). Plaintiff Horne also filed Motions to proceed *in forma pauperis*. (Docs. 2 and 5, Civil No. 11- 1378). On August 8, 2011, we issued an Order and granted Plaintiff's *in forma pauperis* Motions and directed the Clerk of Court to issue process to the U.S. Marshal for service of Plaintiff's Complaint on the two Defendants. (Doc. 7, Civil No. 11- 1378).

In response to Plaintiff's Complaint, Defendants jointly filed a Motion to Dismiss on August 26, 2011, with attached exhibits, Exs. 1-3. **(Doc. 9,** Civil No. 11- 1378**).** Also on August 26, 2011,

---

judge shall make an order for its summary dismissal and cause the petitioner to be notified."

Defendants filed their support brief.  (Doc. 10, Civil No. 11- 1378).   On September 15, 2011, Plaintiff filed his opposition brief with attached exhibits.  (Doc. 12, Civil No. 11- 1378).  Defendants did not file a reply brief.

Defendants' Motion to Dismiss is ripe for disposition.[2]  This Court has jurisdiction over Plaintiff's §1983 civil rights case under 28 U.S.C. §1331 and §1343.

## II.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[3]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

---

[2]We have been assigned this case, Civil No. 11- 1378, for pre-trial matters.  Unless otherwise stated, the docket numbers of the documents cited below refer to Horne's Civil No. 11- 1378 case.

[3]Plaintiff alleges in his pleading that both of the Defendants are employees of York County.  (Doc. 1, Civil No. 11- 1378).  This is sufficient to show that Defendants are state agents.

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing *Rode, supra*.

## III. Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard
> applicable to a motion to dismiss in light of the United States Supreme Court's
> decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,*
> --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint
> must contain sufficient factual matter, accepted as true to 'state a claim that relief is

plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009); *Kuniskas v. Walsh,*

2010 WL 1390870, *3 (M.D. Pa.).[4]

---

[4]In *Reisinger v. Luzerne County,*712 F.Supp. 2d at 343-344 , the Court pointed out:

> In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6)of the
> Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had

## IV. Allegations of Complaint.

In his instant action, Civil No. 11-1378, Plaintiff Horne avers that he has been in held in custody at YCP by the York County District Attorney's Office since December 23, 2010, and that even though the York County Court dismissed the charges against him, Defendant District Attorney ("DA") Kearney refuses to send him back to Maryland Department of Corrections ("MD DOC") to complete service of his Maryland sentence.  Plaintiff Horne also avers that he is seeking damages for the violations of his rights he has sustained due to his prolonged detention at YCP by Defendants.   Specifically, Plaintiff Horne alleges that his prolonged detention at YCP since December 23, 2010, has caused an exacerbation of his depression and his high blood pressure. Plaintiff Horne also avers that his prolonged detention at YCP is depriving him of his mandatory requirement by the MD DOC to participate in work, school or vocational programs, and that it is

---

held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir.1999). Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." ( *Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." FN11 *Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

preventing him from earning good conduct time of 10 days he would have earned for every 30 days he participated in vocational or work programs. (Doc. 1, p. 2, Civil No. 11-1378). Thus, Horne claims that his Maryland prison sentence is being prolonged and that he will have to serve more time in Maryland prison due to Defendants' conduct in detaining him at YCP while the appeal of the dismissal of his York County criminal charges is pending with the Pennsylvania Superior Court.

Additionally, Horne avers that he was deemed ineligible to participate in work programs at YCP. (*Id*.). Plaintiff Horne concludes that "every month [he] has been in the custody of the [Commonwealth] of Pennsylvania has effectively added an additional 10 days to his Maryland sentence once he is returned there." (*Id*.).

As relief, Plaintiff Horne seeks compensatory damages in the amount of $500 per day for the mental strain and anxiety due to his prolonged detention at YCP, and for the additional prison time he will have to serve on his Maryland sentence due to his inability to earn good conduct time while he is confined at YCP.[5] (*Id*., p. 3). Plaintiff Horne further seeks punitive damages in the amount of $100,000 "for the knowing and deliberate deprivation of rights." (*Id*., p. 3). Plaintiff Horne sues Defendants Kearney and Sabol in both their individual and official capacities.[6]

---

[5]Plaintiff cannot obtain compensatory damages for mental and emotional distress since he does not allege any physical injury. *See Allah v. Al-Hafeez*, 226 F. 3d 247, 251 (3d Cir. 2000); *Kantamanto v. King*, 651 F. Supp. 2d 313, 320, n. 1 (E. D. Pa. 2009). Thus, this claim for relief should be dismissed.

[6]Plaintiff cannot seek compensatory and punitive damages from each named Defendant in both their individual and official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, both compensatory and punitive damages, he can only sue the state

## V. Discussion.

As we stated in our R&R issued in Horne's habeas case, according to Exhibit 1 attached to Horne's habeas petition (Doc. 1, Civil No. 11- 1062), namely, April 2011 articles from the York Daily Record pertaining to Horne's case in York County, Pennsylvania:

> [Horne] pleaded guilty to armed robbery in Maryland in July 2009 and was sentenced to 20 years in prison in October 2009.  In March 2010, he was extradited to Franklin County [Pennsylvania] to face robbery charges there.  He was convicted and sentenced to six to 15 years in state prison on Dec. 22 [2010].  He was transferred the following day to York County Prison.[7]

The articles also indicated that Horne was charged "with four York County bank robberies."

(Doc. 1, Ex. 1, Civil No. 11- 1062).[8]  Further, the articles stated as follows:

> [York County] Common Pleas Court Judge Richard K. Renn dismissed the robbery  charges against Corey Richard Horne on Wednesday "with prejudice," which means the district attorney's office cannot re-file the charges.

---

actor Defendants in their individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

Thus, insofar as Plaintiff has sued the two state actor Defendants in both their individual and official capacities and he seeks monetary damages from them, he can only seek monetary damages from these Defendants in their individual capacities.  Therefore, all of Plaintiff's claims for monetary damages against Defendants in their official capacities should be dismissed.

[7] http://ujsportal.pacourts.us/DocketSheets/CP.aspx CP-28-CR-0000737-2010, reveals that Petitioner was convicted by a jury in Franklin County on October 14, 2010, and that he was sentenced on December 22, 2010.

[8]In his Complaint filed in the present case, Civil No. 11-1378, Horne refers to his exhibits filed in his habeas case, Civil No. 11-1062, and he states that the factual background for both of his cases is the same.  Horne also attached copies of the above referenced April 2011 newspaper articles to his opposition brief in Civil No. 11-1378, Doc. 12, Ex. 3.

Renn ruled the commonwealth had failed to bring Horne, 42, to trial within the time period mandated by the interstate agreement on detained prisoners.

(*Id*.).

Additionally, the articles stated as follows:

Before Horne could be sent back to Maryland, the [York County] district attorney's office ordered the prison to hold him pending an appeal.

James Zamkotowicz, deputy prosecutor, said Tuesday his office could order Horne to be held here because the appeal essentially stays Renn's order dismissing the charges.

Adam Witkonis, assistant public defender, argued that parameters of the interstate agreement require Horne to be returned to Maryland immediately.

Zamkotowicz said the same agreement holds that once Horne is returned to Maryland without being prosecuted here, Maryland does not have to send him back to York County if the bank robbery charges are reinstated.

(*Id*.).

Thus, Horne has been held at York County Prison since December 23, 2010, after being extradited from Maryland pursuant to the Interstate Agreement on Detainers ("IAD"). (Doc. 1, p. 1, Civil No. 11- 1062 & Doc. 1, p. 1, Civil No. 11- 1378).  The York County bank robbery charges against Horne  were dismissed (*i.e. nolle prossed*) with prejudice by the York County Court of Common Pleas on April 13, 2011.[9]  Specifically, Judge Richard Renn, Court of Common Pleas

---

[9]Horne attached copies of the four April 13, 2011 Orders of the York County Court dismissing the four (4) bank robbery charges against him to his habeas petition, Doc. 1, Ex. 2, Civil No. 11- 1062.  In the present case, Civil No. 11-1378, Defendants submitted a copy of the York County Court Criminal Docket Sheet in Horne's criminal case, CP-67-CR-702-2011.  (Doc.

("CCP"), York County, dismissed the four criminal cases against Horne, *i.e.* CP-67-CR-702-2011, CP-67-CR-703-2011, CP-67-CR-704-2011, CP-67-CR-706-2011, and the charges were nolle prossed and costs were imposed on the County. (Doc. 9, Ex. 1 and Doc. 12, Ex. 3, Civil No. 11-1378).  The York County Court found that Horne was not tried within the required time period under the IAD by the York County District Attorney's Office after he was extradited to York County.   The District Attorney's Office appealed the dismissal of Horne's charges to the Pennsylvania Superior Court on April 18, 2011, appeal docket number 683 MDA 2011.[10]  The District Attorney's Office directed YCP to continue custody of Horne while its appeal was pending.

Also, on April 18, 2011, Horne, through his counsel, filed a Motion to Compel in York County Court seeking the District Attorney's Office to release him from custody at YCP and to send him back to Maryland.  On April 26, 2011, the York County Court denied Horne's Motion to Compel, holding that it lost jurisdiction over Horne's case when the District Attorney's Office appealed the dismissal of the charges to the Pennsylvania Superior Court.[11]  Further, in the appeal

---

9, Ex. 1). Horne's other three York County criminal cases were docketed to CP-67-CR-703, 704 and 706-2011.  Also, Horne attached the York County Court's four April 13, 2011 Orders to his present opposition brief. (Doc. 12, Ex. 1, Civil No. 11-1378).

[10]In the present case, Civil No. 11-1378, Defendants submitted a copy of the Pennsylvania Superior Court Appeal Docket Sheet regarding the DA's appeal of the York County Court's April 13, 2011 Orders dismissing the four (4) bank robbery charges against Horne, 683 MDA 2011.  (Doc. 9, Ex. 2).

[11]Horne attached to his habeas petition and his instant Complaint a copy of the April 26, 2011 Order of the York County Court denying his Motion to Compel the DA to release him from custody at YCP and send him back to Maryland.  Doc. 1, Ex. 3, Civil No. 11- 1062 and Doc. 12, Ex. 2, Civil No. 11-1378.  The York County Court stated that the "Court lost jurisdiction to change status quo when Commonwealth filed appeal - Pa.R.App. P. 1701." Defendants in the present case, Civil No. 11-1378, attached to their Motion to Dismiss a copy

case pending before the Pennsylvania Superior Court, on April 21, 2011, the District Attorney's Office filed an Application for Stay of proceedings and to maintain custody of Horne. (Doc. 9, Ex. 2, Civil No. 11- 1378).  The Superior Court Docket Sheet indicates that on June 17, 2011, the Superior Court issued an Order directing as follows:

> Upon review of the motion of Appellant, the Commonwealth, to stay proceedings and maintain custody of Appellee, defendant [Horne] below, as well as Appellee's answer to the motion to stay proceedings, and noting the trial court's order of April 26, 2011, the Commonwealth's motion is hereby DENIED as moot under Pa.R.A.P. 1701(a) (after an appeal is taken, the trial court may no longer proceed further in the matter).  Decision on Appellee's counter-application for relief is hereby DEFERRED to the panel assigned to decide the merits of the appeal.[12]

(*Id*.).

To date, the Superior Court has not yet ruled on the appeal filed by the District Attorney's Office. (*Id*.).  The Superior Court Docket Sheet indicates that the District Attorney's Office appellate brief was filed on August 2, 2011, and that the reproduced record was filed by the District Attorney's Office on August 2, 2011.  (*Id*.).  Horne filed his appellate brief on August 31, 2011.  Also, on August 31, 2011, Horne filed a Supplemental Application for Relief, seemingly

---

of the April 26, 2011 Hearing Transcript of the York County Court denying Horne's Motion to Compel the DA to release him from custody at YCP and send him back to Maryland.  Doc. 9, Ex. 3, Civil No. 11- 1378.

[12]We note that the Docket Sheet from Horne's criminal case in the York County Court can be found at http://ujsportal.pacourts.us/DocketSheets/CP.aspx. We also note that the Docket Sheet in Horne's appeal case, 683 MDA 2011, with the Pennsylvania Superior Court can be found at http://ujsportal.pacourts.us/DocketSheets/Appellate.aspx.  We obtained a more current docket sheet from the appeal pending with the Pennsylvania Superior Court from the stated website.

with respect to the stay of the York County proceedings and to his continued custody at YCP.  On September 30, 2011, the Pennsylvania Superior Court deferred a decision on Horne's Supplemental Application for Relief to the panel assigned to decide the merits of the appeal.

Horne remains in custody of YCP while the appeal of the District Attorney's Office  of the York County Court's April 13, 2011 Orders dismissing the criminal charges against Horne with prejudice is pending with the Superior Court.  In his instant civil rights action, Horne claims that his continued detention in YCP is violating his constitutional rights to a speedy trial, due process and equal protection under the Sixth and Fourteenth Amendments and that it is causing him damages for mental strain and for loss of good conduct time towards his Maryland sentence.  Thus, Horne seeks money damages for his continued detention in YCP since the York County criminal charges against him were dismissed with prejudice, and he claims that he should be returned to Maryland so that he can earn good conduct time and finish serving his 20-year sentence there.

As noted, to the extent that Plaintiff Horne is seeking damages for pain and suffering under § 1983, such relief request should be dismissed since Plaintiff fails to allege that he suffered any physical injury.  *See Orikhi v. Wood*, 2006 WL 859543, *7-* 8 (M.D. Pa.)("Section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), conditions a prisoner's claim for mental or emotional injury on a showing of accompanying physical injury.").  We do not find that Plaintiff has alleged physical injury, and we find that an alleged exacerbation of his depression and high blood pressure does not suffice to properly state a claim of physical injury.[13]  Thus, that

---

[13]As stated above, the law is clear that an inmate cannot recover for emotional injury if no physical harm is stated.  In this case, Plaintiff's claim of physical harm is his depression medication had to be doubled in dosage and that he had to be placed on anti-anxiety

Plaintiff Horne's claim for damages for pain and suffering should be dismissed from his Complaint.

Also, as noted, we find that Plaintiff Horne's claims for monetary damages against Defendants in their official capacities should be dismissed. *See Meekins, supra.*

In their Motion to Dismiss, Defendants argue that neither of them are alleged in the Complaint to have taken any personal action in Horne's case. Thus, Defendants argue that they are not liable to Horne due to their lack of personal involvement. Also, Defendants contend that DA Kearney is entitled to absolute prosecutorial immunity from Horne's constitutional claims. Further, Defendants contend that Horne has not stated a claim against Warden Sabol since she does not have the authority to release him from YCP absent a court order. Defendants additionally, maintain that Horne's claims are *Heck* barred, and that they are entitled to qualified immunity from his claims.

### 1. *Lack of Personal Involvement*

Defendants contend that Horne's Complaint fails to state how they were personally involved with his constitutional claims stated above. Defendants state that Horne does not allege and that the exhibits do not show that DA Kearney had any personal involvement in the prosecution of Horne or in the decision to keep custody of Horne in YCP while the appeal of the

---

medication for high blood pressure, and this is clearly insufficient to amount to the requisite harm necessary to seek damages for mental injury. Money damages for his emotional distress are precluded since he has not alleged physical injury. *See* 42 U.S.C. § 1997e(e). The law is clear that an inmate may not file a federal civil rights action based on a claim of mental or emotional injury seeking compensatory damages without any prior showing of physical injury. Thus, a claim for money damages for mental anguish is precluded. *Allah v. Al-Hafeez,* 226 F.3d 247, 250-251(3d Cir. 2000).

dismissal of the criminal cases against Horne was pending with the Pennsylvania Superior Court. Defendants also state that Warden Sabol "did not and could not participate in the decision to retain Horne in jail [at YCP]."  (Doc. 10, p. 3, Civil No. 11-1378).

Plaintiff contends that Defendant DA Kearney was personally involved with his claims since his Exhibit 1 shows that copies of the York County Court's April 13, 2011 Pre-Trial Orders *nolle prossing* the four criminal cases against him were sent to Kearney.  (Doc. 12, p. 2).  Plaintiff further states that a transcript of the April 13, 2011 hearing would show that Defendant Kearney was present and participated in it.  Plaintiff also states that Defendant DA Kearney was involved with his (Plaintiff's) April 18, 2011 Motion to Compel the DA to return him to Maryland since his Motion was directed to the DA.  (*Id*. and Ex. 2).  The Exhibit 3 of Defendants, Doc. 9, Ex. 3, namely, the transcript from the April 26, 2011 hearing on Plaintiff 's Motion to Compel, indicated that Assistant DA Zamkotowicz represented the Commonwealth.  Plaintiff also argues that the newspaper articles he submitted, Doc. 12, Ex. 3, show that Defendant Kearney was the supervisor of the DA's Office and as such, he was the policymaker subject to liability under §1983.

With respect to Defendant Warden Sabol, Plaintiff states that she unconstitutionally detained him from April 13, 2011, when the York County Court dismissed the criminal cases against him, until June 17, 2011, when the Pennsylvania Superior Court issued its Order denying the Commonwealth's Motion to Stay and maintain custody of him as moot and, the Court deferred his counter-motion to compel his return to Maryland to the panel assigned to decide the merits of the appeal.  Plaintiff states that after the April 13, 2011 Order, "there  no longer existed a state court confinement order nor a further basis to detain [him]."  (Doc 12, p. 3).  Plaintiff argues that

14

after April 13, 2011, there was no longer a valid confinement order permitting Defendant Sabol to retain custody of him at YCP.

We agree with Defendants and find that as supervisory officials, Horne has impermissibly named them as Defendants based only on *respondeat superior*. Plaintiff does not aver either Defendant was personally involved in the decision to hold him at YCP or in the proceedings in the York County Court to keep him at YCP pending the Commonwealth's appeal. With respect to DA Kearney and Warden Sabol, we find that Plaintiff merely names them as Defendants based on their supervisory positions. We do not find sufficient allegations about the personal involvement of Defendant Kearney and Defendant Sabol in Plaintiff's Complaint.

As stated, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), repeated the personal involvement necessary in a § 1983 action. In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court stated:

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

"Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

*See Rhines v. Bledose,* 2010 WL 2911628, *2 (3d Cir.).

As discussed above, we do not find that Plaintiff has specifically stated the personal involvement of Defendants Kearney and Sabol with respect to his constitutional claims, and that Plaintiff has named them based on *respondeat superior*.

In *George v. PA DOC,* 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* ) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

Therefore, we will recommend that Defendants District Attorney Kearney and Warden Sabol be dismissed with prejudice.[14]  *See Morales v. Beard*, Civil No. 11-0692, M.D. Pa., 2011 WL 2938225 (M.D. Pa. 6-22-11), adopted by 2011 WL 2930985 (M.D. Pa. 7-19-11).

2.  *Prosecutorial Immunity*

We also agree with Defendants (Doc. 10, pp. 3-4) and find that Defendant DA Kearney is entitled to prosecutorial immunity with respect to Plaintiff's instant claims for damages.  As the Court found in *Williams v. Marino*, Civil No. 03-0632, M.D. Pa., Defendant DA Kearney is entitled prosecutorial immunity with respect to Plaintiff's request for monetary damages as against him. We find that Plaintiff Horne's present claims for monetary damages against Defendant DA Kearney are entirely based on DA Kearney's performance of his official duties in prosecuting Plaintiff in York County and in deciding if the Orders of the York County Court dismissing the charges against Plaintiff should be appealed to the Pennsylvania Superior Court.  As such, Plaintiff's claims are precluded by absolute prosecutorial immunity.  *See Stankowski v. Farley*, 487 F. Supp. 2d 543 (M.D. Pa. 2007); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Radocesky v. Munley*, 247 Fed. Appx. 363, 365 (3d Cir. 2007)("The decision whether or not to initiate or prosecute a case is completely discretionary with prosecutors and also is absolutely immunized from a suit for damages.")citing *Imbler v. Pachtman*, 424 U.S. 409 (1976).

---

[14]Since we also find that DA Kearney is entitled to prosecutorial immunity and that Defendant Warden Sabol is entitled to absolute immunity regarding Plaintiff's claims, we do not recommend that Plaintiff be given chance to amend his pleading against the two Defendants.

In *Gregg v. Pettit*, 2009 WL 57118, *4 (W. D. Pa.), the Court stated:

> The Third Circuit has held that "[t]he decision to initiate a prosecution is at
> the core of a prosecutor's judicial role. A prosecutor is absolutely
> immune when making this decision, even where he acts without a good
> faith belief that any wrongdoing has occurred." *Kulwicki v. Dawson,* 969
> F.2d 1454, 1463-64 (3d Cir.1992) (citations omitted). Here, Plaintiff's
> allegations contained in the operative complaint are essentially that
> the District Attorney Petit and the Assistant District Attorney Lucas
> "maliciously conspired with all other ... defendants to prosecute, convict and
> execute Plaintiff for a heinous crime he did not commit." Dkt. [8] at 4,
> ¶ 17. Hence, it is clear that these two defendants and the allegations of
> the complaint concerning them come within the shield of absolute
> prosecutorial immunity. *See e.g., Rose v. Bartle,* 871 F.2d 331, 345
> (3d Cir.1989) ("charges that the prosecutors induced witnesses to commit
> perjury are barred by the immunity doctrine") ( *quoting Heidelberg v.*
> *Hammer,* 577 F.2d 429, 432 (7th Cir.1978); *Jennings v. Shuman,* 567
> F.2d 1213, 1221-22 (3d Cir.1977) (citation omitted) ("[A] prosecutor is
> entitled to absolute immunity 'while performing his official duties' as a
> officer of the court, even if, in the performance of those duties, he is
> motivated by a corrupt or illegal intention."); *Buckley v. Fitzsimmons,* 509
> U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) ("acts undertaken
> by a prosecutor in preparing for the initiation of judicial proceedings or
> for trial" enjoy absolute immunity); *Broam v. Bogan,* 320 F.3d 1023,
> 1030 (9th Cir.2003) ("A prosecutor's decision not to preserve or turn
> over exculpatory material before trial, during trial, or after conviction is
> a violation of due process under *Brady v. Maryland,* 373 U.S. 83, 87, 83
> S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is, nonetheless, an exercise of
> the prosecutorial function and entitles the prosecutor to absolute
> immunity from a civil suit for damages."). Even the allegation of
> conspiracy between the two prosecutor-Defendants and the other
> defendants comes within a prosecutor's absolute immunity. *Dory v. Ryan,*
> 25 F.3d 81, 83 (2d Cir.1994) ("absolute immunity protects a prosecutor
> from § 1983 liability for virtually all acts, regardless of motivation,
> associated with his function as an advocate. This would even include,
> for purposes of this case, allegedly conspiring to present false evidence
> at a criminal trial. The fact that such a conspiracy is certainly not
> something that is properly within the role of a prosecutor is immaterial,
> because '[t]he immunity attaches to his function, not to the manner
> in which he performed it.' *Barrett v. United States,* 798 F.2d
> 565, 573 (2d Cir.1986).... As much as the idea of a prosecutor
> conspiring to falsify evidence disturbs us ... we recognize that there

is a greater societal goal in protecting the judicial process by preventing perpetual sui 996 F.2d 617, 628 n. 20 (3d Cir.1993) ("engaging in a conspiracy to maliciously prosecute does not affect prosecutor's absolute immunity from liability for the damages resulting from the malicious prosecution") ( *citing Rose v. Bartle*, 871 F.2d 331, 347 (3d Cir.1989)), *abrogation on other grounds recognized by, Knight v. Poritz,* 157 Fed.Appx. 481, 487 (3d Cir.2005).

*See also Light v. Haws*, 472 F. 3d 74, 77-78 (3d Cir. 2007).

We find that Defendant DA Kearney is absolutely immune from all of Plaintiff's damages claims, including his claim that DA Kearney "order[ed] Defendant Sabol to ignore a facially valid court order[s]," *i.e.* the April 13, 2011 Orders of the York County Court *nolle prossing* the four criminal cases against Plaintiff.  (Doc. 12, p. 3 and Ex. 1).  It was clearly within Defendant DA Kearney's  performance of his official duties to decide to appeal the April 13, 2011 Orders to the Pennsylvania Superior Court.

In *Light v. Haws*, 472 F. 3d 74, 77-78 (3d Cir. 2007), the Third Circuit stated:

"Most public officials are entitled only to qualified immunity" from Section 1983 actions. *Yarris v. County of Delaware,* 465 F.3d 129, 135 (3d Cir.2006); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (ordinarily, "[q]ualified immunity represents the norm") (internal quotation marks and citations omitted). Nonetheless, in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that, in light of the immunity historically accorded prosecutors at common law, state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. *Id.* at 427, 431, 96 S.Ct. 984. This protection is "not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (internal quotation marks and citations omitted). This court has since amplified that "participation in court proceedings and other conduct intimately associated with the judicial phases of litigation" are "actions performed in a quasi-judicial role." *Carter v. City of*

> *Philadelphia,* 181 F.3d 339, 356 (3d Cir.1999) (internal quotation marks
> and citations omitted). We have given as other examples of prosecutorial
> actions that warrant absolute immunity, "acts undertaken by a
> prosecutor in preparing for the initiation of judicial proceedings or for trial,
> and which occur in the course of his role as an advocate for the State[.]"
> *Yarris,* 465 F.3d at 135 (internal quotation marks and citations omitted);
> *McArdle v. Tronetti,* 961 F.2d 1083, 1085 (3d Cir.1992) (holding that
> prison physician and prison counselor were absolutely immune as to
> their testimony in court and psychiatric reports to the judge, as that was
> an "integral part of the judicial process").

In order to determine if Defendant DA Kearney is entitled to absolute immunity in this case, we must focus on "on the nature of the function [he] performed." *Id*., at 78. As discussed above, all of Plaintiff's allegations against Defendant DA Kearney related to acts he took in his quasi-judicial function as an advocate for the Commonwealth in prosecuting the York County criminal cases against Plaintiff. Prosecutors, both state and federal, routinely prosecute criminal cases, and this conduct falls squarely within the scope of their official duties. Defendant DA Kearney is an attorney for the Commonwealth, and he is authorized under Pennsylvania law to prosecute criminal cases in York County. *See In re Hickson*, 765 A. 2d 372, 383 (Pa. Super. 2000)("The district attorney is a quasi-judicial officer who represents the Commonwealth.")citing *Com. v. Long*, 392 A. 2d 810, 811 (Pa. Super.1978). Also, the District Attorney is acting within the scope of his official duties in deciding which cases to prosecute. *In re Hickson*, 765 A. 2d at 388(the discretion to act on a criminal complaint remains with the District Attorney)(citations omitted).

Further, the decisions of Defendant DA Kearney as to whether the April 13, 2011 Orders of the York County Court should be appealed and whether Plaintiff should continued to be held in YCP while the appeal is pending were clearly decisions within the scope of his official duties.

20

As such, Defendant  DA Kearney is absolutely immune from Plaintiff's §1983 action for damages. *See Arsad v. Means*, 365 Fed. Appx. 327, 329 (3d Cir. 2010); *Wallace v. Powell*, 2009 WL 6850318 (M.D. Pa. 11-20-09).  Thus, it is clear from Plaintiff's allegations detailed above that his claims against Defendant DA Kearney all relate to the DA's prosecutorial function, and they were all an integral part of the judicial process.

Since Plaintiff is only requesting monetary damages from Defendant DA Kearney (Doc. 1, p. 3), and since this Defendant is entitled to prosecutorial immunity with respect to these claims, we will recommend that Plaintiff's case be dismissed with prejudice as against Defendant Kearney.

3.  *Failure to State a Claim against Defendant Warden Sabol and Absolute Immunity*

Defendants contend that Plaintiff has failed to state a cognizable constitutional claim against Defendant Warden Sabol since "she has no say over whether Horne should be released as of April 13, 2011 or at any other time." (Doc. 10, p. 4).  Defendants also contend that since Plaintiff is being detained at YCP pursuant to the June 17, 2011 Order of the Pennsylvania Superior Court, the act of Defendant Warden Sabol detaining Plaintiff is protected by absolute immunity.  (*Id.*, p. 5).  Defendants cite to *Rivera v. Algarin*, 350 Fed.Appx. 703 (3d Cir. 2009).

As mentioned, Plaintiff filed a Motion with the York County Court on April 18, 2011 to Compel the York County DA to return him to Maryland so that he could continue serving his sentence there.  The York County Court held a hearing on Plaintiff's Motion on April 26, 2011. (Doc. 10, Exs. 1 and 3).  At the hearing, ADA Zamkotowicz argued as follows:

> ATTORNEY [ADA] ZAMKOTOWICZ:      Your Honor, basically we'd be relying primarily on Rule 1701 the Pennsylvania Rules of Appellate Procedure.  Our position is that due to the structure of the Interstate Agreement on Detainers, specifically

> Article IV(e) which states that: If a trial is not held on an indictment
> and the Defendant is returned to the original state, then the
> Commonwealth would be barred from proceeding with trial.  It would
> be dismissed with prejudice on that basis, and that's a basis which we
> would be likely unable to appeal and unlikely would be able to
> obtain custody of the Defendant from the state.  Therefore, in order
> to maintain the status quo, we would ask that the Defendant remain
> in Pennsylvania pending the outcome of the pretrial determination
> appeal.

(Doc. 10, Ex. 3, p. 6).

The York County Court denied Plaintiff's Motion to Compel since the DA's Office filed an appeal of the April 13, 2011 Orders with the Pennsylvania Superior Court on April 18, 2011. Thus, the York County Court could no longer proceed in ruling on whether Plaintiff should be returned to Maryland.  (*See* Doc. 10, Ex. 3, June 17, 2011 Order of Pennsylvania Superior Court). Also, the Pennsylvania Superior Court denied as moot the Commonwealth's Motion to Stay the proceedings and maintain custody of Plaintiff, and deferred Plaintiff's counter-motion for relief to the panel assigned to decide the merits of the appeal.  (*Id*.).

Plaintiff argues that Defendant Sabol is improperly holding him because, after the York County Court issued its April 13, 2011 Orders *nolle prossing* the charges against him, "there no longer existed a state court confinement order" to detain him.  (Doc. 12, p. 3).  We find, as Defendants point out (Doc. 10, p. 4), that Defendant Warden Sabol has no authority at this time to release Plaintiff from confinement at YCP and to return him to Maryland.  The Pennsylvania Superior Court has allowed Plaintiff to remain in custody at YCP and will decide if Plaintiff can be returned to Maryland when the merits panel decides the Commonwealth's appeal.  In *Rivera,* the Third Circuit stated that "[a]n 'action taken pursuant to a facially valid court order receives absolute

immunity from §1983 lawsuits for damages.'" 350 Fed.Appx. at 709 (citations omitted).  Thus, based on *Rivera*, we agree with Defendants that Warden Sabol is entitled to absolute immunity from Plaintiff's claims for damages due to his continued confinement at YCP after April 13, 2011.[15]

Accordingly, we will recommend that Defendant Warden Sabol be dismissed with prejudice.[16]

## VI.  Recommendation.

Based upon the foregoing, it is respectfully recommended that the Motion to Dismiss of Defendants Kearney and Sabol (**Doc. 9**) be granted, and that Plaintiff Horne's Complaint (**Doc. 1**) be dismissed with prejudice as against Defendant Kearney and Defendant Sabol.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: October 24, 2011**

---

[15]As indicated above, Plaintiff only seeks money damages against both Defendants. (Doc. 1, p. 3).

[16]Defendants also argue that Horne's Complaint challenging the validity of his confinement at YCP should be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1984), since "the validity of his imprisonment is still pending."  (Doc. 10, p. 5).  Undoubtedly Horne's present claims affect the duration of his confinement  in Maryland since he alleges that he is being deprived of his ability to earn good conduct time towards his Maryland sentence while he is confined at YCP.  However, we fail to see how Plaintiff's instant claims are *Heck* barred since he has not been convicted in the York County criminal cases and it is not yet clear what will be the outcome of the York County charges against Plaintiff.  *See Taylor v. Scism*, 2010 WL 2470806 (M.D. Pa. 6-16-10).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COREY RICHARD HORNE, | : | CIVIL ACTION NO. **1:11 CV-1378** |
| | : | |
| Petitioner | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| THOMAS KEARNEY, | : | |
| District Attorney, York County, and | : | |
| MARY SABOL, | : | |
| Warden York County Prison, | : | |
| | : | |
| | : | |
| Respondents | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 24, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *Defendant novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where

24

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                   **s/ Thomas M. Blewitt**
_____   **THOMAS M. BLEWITT**
                                               **United States Magistrate Judge**

**Dated: October 24, 2011**